1

2                                                          Honorable John C. Coughenour

3

4

5

6

7                                  UNITED STATES DISTRICT COURT
                                 WESTERN DISTRICT OF WASHINGTON
8                                            AT SEATTLE

9

10    UNITED STATES OF AMERICA,                    NO.  CR19-115-JCC

11                          Plaintiff,
                                                   UNITED STATES' OPPOSITION TO
12           v.                                    DEFENDANT'S MOTION TO SUPPRESS
                                                   PHYSICAL EVIDENCE
13    JOSEPH SAM a/k/a WILLIAM
      EARLYSTAR CLARK,                             Noted on Motion Calendar: March 27, 2020
14
                            Defendant.
15

16           The United States of America, by and through Brian T. Moran, United States

17    Attorney for the Western District of Washington, and Rebecca S. Cohen and J. Tate London,

18    Assistant United States Attorneys for said District, files this response in opposition to the

19    Motion to Suppress Physical Evidence filed by Defendant Joseph Sam (Docket No. 49).

20                              **I.  SUMMARY OF ARGUMENT**

21           The Government asks the Court to deny Sam's motion because it fundamentally

22    misconstrues the nature of the search warrant at issue.  Specifically, Sam falsely claims that

23    the warrant for his Facebook account lacked any restriction as to what the government was

24    entitled to seize.  The confusion in Sam's motion stems from the fact that he conflates two

25    distinct things – the account information the warrant required Facebook to disclose to the

26    government to *review*, and the much more limited information the warrant authorized the

27    government to *seize*.  With respect to the latter, the warrant limited the scope of the

28    information the government could seize to evidence relevant to the crimes charged in the

Indictment; namely, a robbery and assault that occurred on the Tulalip Reservation on February 6, 2019.  In this way, the scope of the information the government could seize did contain a temporal limitation, in that any evidence seized must be related to these crimes that occurred on that date.  Moreover, the warrant set forth a two-step process for the search and seizure of the electronic information – in which the government would first review the entirety of the records disclosed by Facebook and then seize only relevant information – that is explicitly authorized by the Federal Rules of Criminal Procedure and has been approved by the Ninth Circuit Court of Appeals.  Finally, the Court should reject Sam's argument that a filter team was required to review the account information provided by Facebook because applicable Ninth Circuit precedent makes clear that a filter team is not constitutionally required under the circumstances present here.

## II. BACKGROUND INFORMATION

### A.    Factual Background

The charges in this case arise from a robbery that occurred at a residence on the Tulalip Indian Reservation on February 6, 2019, in which the government alleges that defendant Joseph Sam, co-defendant Dennis Peltier, and unindicted co-conspirator Mariah Bourdieau conspired to rob – and did in fact rob – victim John Doe of approximately one ounce of heroin.  The coconspirators had planned to lure John Doe to Peltier's residence using the guise that Peltier wanted to buy the heroin from John Doe, but then rob John Doe of the heroin.  The government also alleges that when John Doe refused to hand over the heroin during the robbery, Sam shot him in the back, causing a spinal cord injury and paralysis to John Doe's lower body.

After the robbery and shooting, the Tulalip Police Department (TPD) obtained a warrant for Peltier's apartment, and evidence found in the residence, along with information obtained from interviews, led TPD to identify and arrest Peltier and Bourdieau within days.  After his arrest, Peltier told TPD that although he did not know the shooter's name, Bourdieau had referred to him as "Strap," and that it was Bourdieau who had originally come up with the plan for the robbery.

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE - 2
*U.S. v. Joseph Sam*; CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

In an attempt to identify the shooter, TPD conducted research on Facebook and determined that there was only one Facebook user who was friends on Facebook with both Peltier and Bourdieau – a user with the Facebook name "Streezy NW" and a nickname of "Strap."  The Streezy NW account had pictures of an adult male that TPD was able to identify as Joseph E. Sam, in part through tattoos shown in the pictures.

On March 20, 2019, United States Magistrate Judge Mary Alice Theiler issued a search warrant for information in the Facebook accounts of Peltier and Bourdieau.  Upon review, the records returned by Facebook revealed communications between the account associated with Bourdieau and the "Streezy NW" account, including communications where Bourdieau referred to the user of the "Streezy NW" account as "Strap."  Additionally, Facebook conversations between Bourdieau and the "Streezy NW" account discussed narcotics trafficking, and, on February 6, 2019, Bourdieau asked "Streezy NW" to help her with a robbery.  The communications also show that in the days after the robbery of John Doe, Bourdieau was frantically trying to get in touch with "Streezy NW," and that Bourdieau had tried to recruit a fourth individual – Facebook user "Captian Kachuckles," to help with the robbery.  Interviews with additional witnesses led TPD to further corroborate the identity of the person using the "Streezy NW" Facebook account as Joseph E. Sam, and to confirm that Sam was the shooter.

On May 15, 2019, Sam was arrested on an arrest warrant issued by the Tulalip Tribal Court, and searched incident to arrest, when a cell phone was recovered from his person. The lock screen on the phone contained the name "Streezy" written across the screen, under the date and time.  When law enforcement encountered Sam on May 15, 2019, he gave the name "William E. Clark" and provided an identification under this name.  Through records checks and reviewing photographs, the arresting officer determined that William E. Clark was Joseph Sam.  Sam admitted that he was born with the name "Joseph Earlystar Sam" and had later changed his name to "William Earlystar Clark."

Officers transported Sam back to TPD, where he was interviewed after waiving his *Miranda* rights.  During the interview, Sam denied involvement in the robbery or the assault,

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 3
*U.S. v. Joseph Sam;* CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

stating he was in Bellingham at the time.  Sam stated that he previously had been questioned by a Tulalip gaming official, who mistakenly identified him.  Sam further stated that the gaming official had been looking for another man who looked identical to him except for a scar.  Sam asserted that this other individual was likely the one involved in the robbery and assault.  When questioned about the "Streezy NW" Facebook account, Sam denied that the account was his.  He stated that someone else must have created the account and posted that information, pretending to be him, possibly trying to implicate him in the crimes.

### B.    The Search Warrant at Issue in Sam's Motion

On May 22, 2019, United States Magistrate Judge Michelle L. Peterson issued another search warrant to Facebook, this time covering two different Facebook accounts, the "Streezy NW" account and the "Captain Kachuckles" account.  A copy of the government's application for the warrant, including the affidavit of FBI Special Agent Matthew McElhiney, is attached hereto as Exhibit A.  The warrant itself is attached to Sam's Motion, at Dkt. 49-1.  For each account, the warrant directed Facebook to provide the FBI with subscriber and associated records.  For the "Captain Kachuckles" account, the information to be searched was limited to the period from January 1, 2019, to the present.  *See* Exhibit A, page 2 (Attachment A to the warrant).  The information to be disclosed was set forth in Attachment B to the warrant, and included, among other things, contact information for the accounts, photos uploaded to the accounts, and all communications and messages made or received by the users.  Exhibit A, pages 3-4.  Attachment B to the warrant specifically limited the information to be seized pursuant to the warrant to the following:

> All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 113(a)(3) (Assault Resulting in Serious Bodily Injury), 18 U.S.C. § 1153(a) (Offenses Committed in Indian Country), 18 U.S.C. §§ 371 and 2111 (Conspiracy to Commit Robbery) and 18 U.S.C. § 2111 (Robbery) for each account or identifier listed on Attachment A, including information pertaining to the following matters:
>
> > (a) Records that identify any persons who use or access the account specified, or who exercise in any way any dominion or control over

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 4
*U.S. v. Joseph Sam;* CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

the same, including geolocation data associated with such use or access;

(b) Records that identify associates of the account specified;

(c) Records relating to the planning or execution of the robbery and shooting of John Doe on **February 6, 2019**;

(d) Records relating to [UNIT B] Tulalip, Washington;

(e) Records relating to the identity of the shooter (also known as "Strap");

(f) Records relating to narcotics trafficking, firearms, or ammunition; and

(g) Records (including messages, posts, notes, drafts, photographs, videos, or other documents) relating to the relationship between Dennis Peltier, Mariah Boudrieau, John Doe, Joseph Sam, and/or the user of the Facebook account named "Captian Kachuckles," as well as communications and posts between or amongst any of the same.

Exhibit A, page 5 (emphasis added).

Facebook disclosed to the FBI 16,544 pages of information pertaining to the "Streezy NW" account in response to the warrant. Dkt. 49-2. In accordance with the terms of the warrant, Special Agent McElhiney reviewed this information for information relevant to the investigation and seized 1,934 pages that met the requirements set forth in Attachment B.[1] *See* Ex. B (Return filed by the FBI). The remainder of the pages were not seized, nor were they turned over to the U.S. Attorney's Office by the FBI.

**C.    Procedural History**

On June 19, 2019, a federal grand jury issued a three count indictment charging Sam with (1) Conspiracy to Commit Robbery, in violation of Title 18, United States Code, Section 371; (2) Robbery, in violation of Title 18, United States Code, Sections 2, 1153 and

---

[1] Some of the information on these 1,934 pages was redacted as non-responsive to Attachment B, meaning that less than 1,934 pages of actual information was seized.

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE - 5
*U.S. v. Joseph Sam*; CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   2111; and (3) Assault Resulting in Serious Bodily, in violation of Title 18, United States

2   Code, Sections 1153(a) and 113(a)(6).  Peltier was also charged with Counts 1 and 2.

3       In December of 2019, co-defendant Peltier pleaded guilty to Count 1 and Count 2.  He

4   has not yet been sentenced.  Because she is not an enrolled member of a federally recognized

5   tribe like Sam and Peltier, co-conspirator Bourdieau was charged in Snohomish County

6   Superior Court, and is awaiting trial.

7       Sam has now filed a Motion to Suppress Physical Evidence (Dkt. 49), arguing that the

8   evidence seized from Facebook for the "Streezy NW" account should be suppressed.

9   Notably, the motion does not assert that the government lacked probable cause for the

10  warrant or that the government failed to follow the terms of the warrant, but instead argues

11  for suppression on the grounds that (1) the information sought by the warrant was overbroad;

12  (2) the Facebook records seized by the FBI did not contain a temporal limitation; and (3) the

13  lack of a filter team means the warrant was overbroad.  For the reasons discussed below, the

14  government asks the Court to reject Sam's arguments and deny the motion.

### III.   ANALYSIS AND ARGUMENT[2]

#### A.   Sam's Motion Misconstrues the Warrant.

17      Sam's motion is based two false premises – that "the search warrant failed to narrow

18  the content to be seized from [Sam's] Facebook account," and that the "search warrant

---

[2] There is an open question as to whether Sam even has standing to raise his Fourth Amendment challenge to the warrant.  As noted above, when TPD interviewed Sam after his arrest, he denied that he was owner or user of the account.  Now, without explanation, Sam is claiming a Fourth Amendment interest in the account, which his motion refers to as "defendant's Facebook account."  Accordingly, Sam's motion should be denied for lack of standing until the defense stipulates that Sam was the user of the account.  *See, e.g., Rakas v. Illinois*, 439 U.S. 128 (1978) (a defendant "has no right to have evidence excluded as violative of Fourth Amendment rights unless the rights violated were his own"); *United States v. Payner*, 447 U.S. 727, 731 (1980) (holding that a "defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party") (emphasis in original).

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 6
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

authorized the entire seizure of Facebook records [for Sam's Facebook account] without any limitation on dates." Dkt. 48, at 1-2. Both assertions are demonstrably false.

**1.     The Government Seized as Evidence Less than Nine Percent of the Facebook Account.**

As an initial matter, the warrant did not allow the seizure of the entirety of the "Streezy NW" Facebook account in the manner the defense contends. To the contrary, the entire purpose of Attachment B was to limit what the FBI could seize to records that contained evidence pertinent to violations of the three criminal statutes charged in the Indictment (assault resulting in serious bodily injury, robbery, and conspiracy to commit robbery). This is exactly what happened, as the FBI seized less than 1,934 of the 16,544 total pages disclosed by Facebook. Stated differently, by applying the limitations imposed by Attachment B.II, the FBI felt it could seize less than 9 percent of what was provided by Facebook for review.

The defense's motion categorically overlooks the two-step process set forth in Rule 41(e)(2)(B) for searches of electronically stored evidence. This rule authorizes the government to "seize" the entirety of media containing electronic evidence and then later "review" the media offsite to determine what specific evidence may be seized pursuant to the warrant:

> **Warrant Seeking Electronically Stored Information**. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

Fed. R. Crim. P. 41.

This two-step process was implemented in 2009 in acknowledgement of the difficulty of reviewing voluminous electronically stored information. The Rules Committee emphasized that the two-step process was "inherent in searches for electronically stored information." Fed. R. Crim. P. 41, Advisory Committee's Notes (2009 amend.). The Rules

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 7
*U.S. v. Joseph Sam*; CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

Committee explained that "[t]his rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant." *Id.*

The manner in which law enforcement executed the warrant with respect to the "Streezy NW" account is entirely consistent with the two-step process ratified in Rule 41(e)(2)(B). Namely, under Part I of Attachment B, Facebook disclosed the electronic evidence to law enforcement. Subsequently, under Part II of Attachment B, Special Agent McElhiney conducted an off-site "review" of the evidence to determine what could be specifically seized as evidence in light of the restrictions contained in Attachment B. This review resulted in the seizure of *less than nine percent* of the total evidence. Accordingly, the defense cannot reasonably contend that the government seized the entire account as evidence.

Sam does not assert that the two-step process described above is unconstitutionally overbroad in every case, and he concedes that in some cases it is in fact permissible. Sam instead argues that the two-step process applied in this particular case in overbroad, relying on *United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015). *Flores* involved a suppression motion over an almost identical Facebook warrant. Although the *Flores* court did not actually decide whether the warrant in that case was overbroad, its discussion of the topic is pertinent here and actually supports the government's position, despite Sam's assertions to the contrary.

The defendant in *Flores* was convicted of importation of marijuana, and the government had obtained a search warrant requiring Facebook to disclose the entirety of Flores' account. Like in this case, the warrant authorized the government to seize only evidence of violations of specific criminal statutes. While Facebook produced over 11,000 pages of data in Flores' account, after a review by the investigative team, only approximately 100 pages were seized. *Flores*, 802 F.3d at 1044. Flores challenged the warrant as unconstitutional because it allowed the government to search all 11,000 pages when only a small fraction of the pages were actually seized. The Ninth Circuit rejected this argument

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 8
*U.S. v. Joseph Sam;* CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

and approved the process leading to the seizure, explaining as follows: "'Over-seizing' is an accepted reality in electronic searching because [t]here is no way to be sure exactly what an electronic file contains without somehow examining its contents." *Id*. at 1044-45. The Court also placed limitations on this type of searching, such as the requirement that "warrants must specify the particular crime for which evidence is sought," *id*. at 1045, which occurred here.

The two-step process utilized here and in *Flores* makes sense, as there is no other feasible way to segregate the relevant information possessed by Facebook. In this case, for example, Facebook does not have the ability to perform an electronic search for the entirety of the "Streezy NW" account to identify information relevant to the robbery and assault. The only way for this to happen is for someone to review the material and determine what information is authorized for seizure by Attachment B, based on its relevance to the investigation.

Courts have widely approved the two-step procedure for executing warrants for electronic evidence outside of the Facebook context. As the Sixth Circuit has explained, "[t]he federal courts are in agreement that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a 'sufficient chance of finding some needles in the computer haystack.'" *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012). For example, in *United States v. Bach*, 310 F.3d 1063, 1067-68 (8th Cir. 2002), the Eighth Circuit upheld as reasonable the execution of a two-step warrant under 18 U.S.C. § 2703 for email stored with a web-based email provider. In *Bach*, an investigator "obtained a state search warrant to retrieve from Yahoo! e-mails between the defendant and possible victims of criminal sexual conduct, as well as the Internet Protocol addresses connected to his account." *Id.* at 1065. However, Yahoo! employees did not attempt to find this particular information:

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 9
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

> Yahoo! technicians retrieved all of the information from Bach's account at
> dlbch15@yahoo.com and AM's Yahoo! e-mail account.  According to Yahoo!,
> when executing warrants, technicians do not selectively choose or review the
> contents of the named account. The information retrieved from Bach and AM's
> accounts was either loaded onto a zip disc or printed and sent to [a law
> enforcement officer].  E-mails recovered from Bach's account detail him
> exchanging pictures with other boys and meeting with them.

*Id.*  Yahoo!'s approach in *Bach* was reasonable, both due to the overwhelming resources it would require to perform a more in depth search, and because a Yahoo! employee would not have the relevant knowledge to know which communications are relevant and which are not. The same logic applies equally here, as is explained further by a 2014 district court decision from the District of Columbia pertaining to an email search warrant:

> [I]t would be unworkable and impractical to order [the email service provider]
> to cull the e-mails and related records in order to find evidence that is relevant
> to the government's investigation. . . . To begin with, non-governmental
> employees untrained in the details of the criminal investigation likely lack the
> requisite skills and expertise to determine whether a document is relevant to
> the criminal investigation. Moreover, requiring the government to train the
> electronic service provider's employees on the process for identifying
> information that is responsive to the search warrant may prove time-
> consuming, increase the costs of the investigation, and expose the government
> to potential security breaches.

*In re Search of Information Associated with [redacted]@mac.com*, 13 F. Supp. 3d 157, 165-66 (D.D.C. 2014).

        **2.**      **The Warrant Was Not a General Search Because the Review of the Electronic Evidence was Bound by the Limitations contained in Attachment B.II.**

Despite the fact that Special Agent McElhiney applied limitations that resulted in the seizure of less than nine percent of the evidence, the defense insists that warrant lacked appropriate restrictions.  The defense's central contention is that the warrant for the Streezy NW account did not contain a date restriction.  Dkt. 49, at 6 ("the warrant mentions nothing about setting date restrictions for Account 1").  The defense thereby overlooks the plain language in Attachment B.II indicating that law enforcement may seize "(c) Records

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 10
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1    relating to the planning or execution of the robbery and shooting of John Doe on **February

2    6, 2019.**"  Exhibit A, page 5 (emphasis added).  Having overlooked this obvious date

3    restriction, the defense's challenge of the motion is entirely misplaced.

4           The defense appears to be confused with why Attachment A of the warrant limited the

5    disclosure of information regarding the "Captian Kachuckles" account to January 1, 2019,

6    but no such limitation was included for the "Streezy NW" account.  Here, the evidentiary

7    value of the "Captian Kachuckles" account was entirely different than the "Streezy NW"

8    account, especially because Sam had expressly denied that he was the user of the "Streezy

9    NW" account and alleged that the real shooter had created the account to frame him for the

10   shooting, making the identity of the account holder of utmost importance.  In addition, law

11   enforcement had obtained evidence indicating the user of the Streezy NW account was the

12   shooter and had a preexisting relationship with his co-conspirators, so the historical

13   relationship between the "Streezy NW" account holder and Peltier and Bourdieau was

14   relevant.  Accordingly, there was an investigatory need to conduct a broader search of the

15   "Streezy NW" account than the "Captian Kachuckles" account.[3]

16          It is important to note that the time limit in Attachment B.II was only one of many

17   limitations required by the warrant.  The preamble for the limitations indicated that law

18   enforcement could only seize "fruits, contraband, evidence and instrumentalities" of the

19

20   ──────────────

21   [3] It is ironic that the defense is attempting to twist law enforcement's careful treatment of
     the two accounts into a Fourth Amendment violation.  Law enforcement conscientiously
22   determined that it was not necessary to examine the relationship between an individual
     Bourdieau attempted to recruit into the conspiracy in the same manner as the relationship
23   between Bourdieau and the individual who likely was the actual shooter.  The government
     should not be penalized for acting conscientiously and rightly limiting the information
24
     sought from the "Captian Kachuckles" account while seeking a broader array of information
25   from the "Streezy NW" account that was pertinent to the investigation.  The same date
     restriction of January 1, 2019 for the "Streezy NW" account simply would not have been
26   sufficient to fully examine the identity of the account holder or the relationship between the
     co-conspirators who planned and carried out the armed robbery that occurred on February 6,
27   2019.
28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 11
*U.S. v. Joseph Sam;* CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

violations for which probable cause had been established in the affidavit.  The first two limitations after the preamble (categories (a) and (b)) indicated that law enforcement could seize those records that allowed law enforcement to identify who used the account or who was associated with it.  The next three limitations (categories (c) through (f)) focused specifically on the shooting on February 6, 2019 that occurred at the apartment in Tulalip, Washington, was carried out by a shooter who used the alias "Strap," and which centered around narcotics trafficking.  The final limitation (category (g)) naturally allowed law enforcement to seize evidence of the relationship between the potential co-conspirators who were *specifically* named.

It is telling that the defense's motion does not even acknowledge a single one of these limitations.  The defense's contention that the warrant had "no objective procedures . . . to protect against general exploratory rummaging," Dkt. 49, at 6, simply cannot be reconciled with not only the many limitations described above, but also the fact that Special Agent McElhiney felt so constrained by the limitations described in Attachment B.II that he seized less than nine percent of the materials contained in the account.

Limitations similar to those contained in Attachment B.II have been found to be constitutionally sufficient.  *See, e.g., United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999) ("The portions of the warrant limited to fruits and evidence of gambling are sufficiently particular; even though those portions do not contain a time limitation, their subject-matter limitation (fruits and evidence of gambling) fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crimes described in the affidavit.").  Courts have also upheld Facebook warrants – broader than the warrant challenged here – where the information to be seized is not governed by a blanket date restriction but are instead limited by a connection to the investigation for which the warrant is sought.  *See United States v. Allen*, 2018 WL 1726349, at *6 (D. Kan. Apr. 10, 2018) (finding that a warrant to search the defendant's Facebook account was not overbroad despite the lack of temporal limitations because it was limited to gathering evidence of a specified crime which by its nature required a broad search); *United States v. Pugh*, 2015

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 12
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

WL 9450598, at *26 (E.D.N.Y. Dec. 21, 2015) (concluding that a warrant to search a Facebook account is sufficiently particular if it is "limited by reference to an exemplary list of items to be seized and the crime being investigated[.]").

Accordingly, although it is sometimes appropriate to include a specific temporal limitation in warrants, it is not always necessary to do so, and the potential need for such a limitation depends on the scope of the investigation.   Here, the government intentionally chose not to request a temporal limitation over the information it requested for review.  This was because the identity of the Facebook user was relevant, as Sam had denied any connection to the "Streezy NW" account when he was interviewed, and claimed that the real shooter must have created the account to set him up.  Because it was this account, in part, that tied the user of the account to Bourdieau and the conspiracy, it was important for the FBI to investigate who opened the account, who used the account, who the user of the account communicated with, the relationship between the account user and other members of the conspiracy, and what was said about the conspiracy.  For everything just mentioned except the conspiracy itself, information going all the way back to the opening of the account was therefore relevant, and it would have limited the investigatory value of the warrant to restrict the information disclosed by Facebook to a shorter time period.

### B.    No Filter Team Was Required.

Finally, there is no merit to Sam's implication that only a filter team could cure what he views as an unconstitutionally overbroad warrant.  The decision Sam relies on, *In re Application for a Search Warrant to Seize and Search Electronic Devices From Edward Cunnius*, 77 F. Supp. 2d 1138 (W.D. Wash. 2011), does not compel the result he seeks.  In the *Cunnius* case, a United States Magistrate Judge declined to issue a search warrant for electronic devices seized from the subject's home, where the government did not agree to the use of a filter team or waive its reliance on the plain view doctrine.  The *Cunnius* decision was based largely on *United States v. Comprehensive Drug Testing, Inc.* ("*CDT III*"), 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc), but the Ninth Circuit's decision in *CDT III* makes clear that the type of search protocols later discussed in *Cunnius* are merely *guidance*, not

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE - 13
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1    Constitutional requirements.  *CDT III*, 621 F.3d at 1178.  The Ninth Circuit subsequently

2    confirmed the scope of its *CDT III* decision in *United States v. Schesso*, 730 F.3d 1040 (9th

3    Cir. 2013), another case arising from this district.

4           In *Schesso*, the search warrant in question authorized the search of the subject's

5    electronic devices for evidence that he had possessed or distributed child pornography.  The

6    warrant did not require the *CDT III* search protocols.  When considering whether the lack of

7    these protocols should impact its decision on suppression, the Ninth Circuit held that it

8    should not.  As the Court explained: "After considering constitutional requirements, the

9    temporal sequence of the cases, and the advisory nature of the [*CDT III*] guidelines, we

10   conclude that the absence of these protocols in Schesso's warrant neither violates the Fourth

11   Amendment nor is inconsistent with CDT or its predecessor case, *Tamura*."  *Schesso*, 730

12   F.3d at 1047.  The *Schesso* court went on to describe the *CTD III* protocols as merely

13   guidance, and explained that the guidance is "no longer binding circuit court precedent"

14   because it was moved to a concurring opinion, and not found in the majority opinion.  *Id*. at

15   1049.  The relevant section of the *Schesso* opinion concluded by stating that, "[u]ltimately,

16   the proper balance between the government's interest in law enforcement and the right of

17   individuals to be free from unreasonable searches and seizures of electronic data must be

18   determined on a case-by-case basis."  *Id*.  Thus, there is no strict requirement of a filter team

19   in order to pass Constitutional muster, as Sam's motion suggests.

20          The government acknowledges that there are situations where a filter team is needed,

21   such as when there is a legitimate concern that the produced material may include privileged

22   material.  However, there was no such concern that would require the use of a filter team

23   here.  This is analogous to a warrant authorizing the search of an entire house, where only

24   evidence related to a specific crime can actually be seized.[4]  Or similarly, a warrant for the

25   _____

26   [4] A discussion by the Seventh Circuit in a 2017 decision is relevant on this point.  In

27   *United States v. Ulbricht*, 858 F.3d 71 (7th Cir. 2017), *abrogated on other grounds*, the court
     explained as follows when discussing the scope of a computer search warrant:

28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 14
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   financial records of a business where, again, only those records found pertinent to the

2   investigation are authorized for seizure.  In neither of those cases would a filter team be

3   required to sort through what evidence could be seized, even though the law enforcement

4   officer who performed the search would have reviewed or seen a broader scope of

5   evidence/material.  The same is true here, and the government asks the Court to reject Sam's

6   assertion that a filter team was required to save the warrant from over-breadth.

7   //

8   //

9   //

10

11

12

13

14

15

16

17

18

19

20   _____

21          [I]t is important to bear in mind that a search warrant does not necessarily lack
            particularity simply because it is broad. Since a search of a computer is "akin
22          to [a search of] a residence," id., searches of computers may sometimes need to
            be as broad as searches of residences pursuant to warrants. Similarly,
23          traditional searches for paper records, like searches for electronic records, have
            always entailed the exposure of records that are not the objects of the search to
24          at least superficial examination in order to identify and seize those records that
            are. And in many cases, the volume of records properly subject to seizure
25          because of their evidentiary value may be vast. None of these consequences
            necessarily turns a search warrant into a prohibited general warrant.
26

27

28   *Utrecht*, 858 F.3d at 100.

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 15
*U.S. v. Joseph Sam;* CR19-115-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny Sam's Motion to Suppress Physical Evidence.[5]

DATED this 20th day of March, 2010.

BRIAN T. MORAN
United States Attorney

*s/ Rebecca S. Cohen*
REBECCA S. COHEN
J. TATE LONDON
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
E-mail: Rebecca.Cohen@usdoj.gov

---

[5] The government also notes that due to the doctrine of severance, even if the Court were to disagree with its position and find that the warrant was overbroad, the Court would only need to strike from the warrant those portions that are invalid and preserve any portion that satisfies the Fourth Amendment.  Because everything that was seized from the Facebook account was relevant to the investigation into the robbery and assault, none of the seized material would be subject to suppression.  *See United States v. Flores*, 802 F.3d 1028, 1045 (9th Cir. 2015) (explaining the doctrine of severance and holding that even if the warrant was overbroad in some manner, no suppression of the seized Facebook material would be necessary, as everything seized was relevant to the charged crimes).

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 16
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1

2                          <u>CERTIFICATE OF SERVICE</u>

3

4        I hereby certify that on March 20, 2020, I electronically filed the foregoing with the

5   Clerk of Court using the CM/ECF system which will send notification of such filing to the

6   attorneys of record for the defendant.

7

8                                        BRIAN T. MORAN
                                         United States Attorney
9

10                                       <u>*s/ Rebecca S. Cohen*</u>
                                         REBECCA S. COHEN
11                                       Assistant United States Attorney
                                         United States Attorney's Office
12                                       700 Stewart Street, Suite 5220
                                         Seattle, Washington 98101-1271
13
                                         Phone: (206) 553-7970
14                                       E-mail: Rebecca.Cohen@usdoj.gov

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE - 17
*U.S. v. Joseph Sam; CR19-115-JCC*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970