THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>       v.<br><br>JOSEPH SAM,<br><br>                    Defendant. | CASE NO. CR19-0115-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Joseph Sam's motion to suppress physical evidence (Dkt. No. 49). Having considered the parties' briefing and the relevant record, the Court hereby finds oral argument unnecessary and DENIES the motion for the reasons explained herein.

I.   **BACKGROUND**

Defendant Joseph Sam has been indicted and charged with conspiracy to commit robbery, robbery, and assault resulting in serious bodily injury. (Dkt. No. 49 at 1.) These charges stem from an alleged assault and robbery of victim John Doe. (*Id.*) According to Mr. Doe's statement to Tulalip Tribal Police, Mr. Doe is a heroin dealer who was attempting to complete a transaction with his ex-girlfriend Mariah Bourdieau. (*Id.* at 2.) To conduct the transaction, Mr. Doe went to the apartment of Co-Defendant Dennis Peltier on February 6, 2019. (*Id.*) Shortly after Mr. Doe arrived at the apartment, Mr. Peltier and Ms. Bourdieau were allegedly joined by a

third individual (disguised and in possession of a gun), whom the government claims to be Mr. Sam. (Dkt. No. 60 at 3.) The three individuals then attempted to rob Mr. Doe of his money and drugs. (*Id.* at 2.) Mr. Doe tried to flee through the front door, but he was shot in the back and subsequently paralyzed in his lower body. (Dkt. Nos. 49 at 2 and 60 at 2.)

The following day, Tulalip police obtained a search warrant for Mr. Peltier's apartment, where they found evidence connecting Mr. Peltier and Ms. Bourdieau to the alleged robbery. (Dkt. No. 49 at 2.) Based on that evidence, the police arrested Mr. Peltier the next day. (*Id.*) After being arrested, Mr. Peltier told the police that Ms. Bourdieau planned the robbery and that the third individual was unknown to him but was called "Strap" by Ms. Bourdieau. (*Id.*) The police subsequently arrested Ms. Bourdieau on February 12, 2019, and she immediately exercised her right to remain silent. (*Id.*)

Tribal Detective Sallee used his police Facebook account to locate a common Facebook friend between Mr. Peltier and Ms. Bourdieau (referred to as the "Streezy NW" account). (*Id.* at 2–3.) The common account had posts indicating that the account's user went by the nickname "Strap." (*Id.*) The account also had pictures of an adult male whom Tulalip police were able to identify as Joseph Sam based on tattoos in the pictures. (Dkt. No. 60 at 3.) Additional witness testimony provided corroborating evidence that the Streezy NW account allegedly belonged to Mr. Sam. (*Id.*) On this information, the Honorable Mary Alice Theiler, United States Magistrate Judge, issued Detective Sallee a search warrant for Mr. Peltier's and Ms. Bourdieau's Facebook accounts. (*Id.*) Detective Sallee uncovered messages exchanged between Ms. Bourdieau and the Streezy NW account user starting in July 2018. (Dkt. No. 49 at 3.) In those messages, Ms. Bourdieau and Streezy NW, whom Ms. Bourdieau referred to as "Strap," discussed narcotics trafficking. (Dkt. No. 60 at 3.) In messages dated February 6, 2019, Ms. Bourdieau asked Streezy NW to help her with a robbery. (*Id.*) Ms. Bourdieau also tried to recruit another Facebook user, "Captain Kachuckles," to help with the robbery. (*Id.*)

Mr. Sam was arrested on May 15, 2019. (*Id.*) Upon arrest, Mr. Sam waived his *Miranda*

1 rights, denied involvement in the robbery and assault, stated he was in Bellingham at the time, 2 claimed he has been mistakenly identified before, and insisted that the Streezy NW account must 3 have been created by someone else pretending to be him and possibly trying to implicate him in 4 the crimes. (*Id.* at 3–4.)

5       On May 22, 2019, agents for the Federal Bureau of Investigation applied for a search 6 warrant covering the Streezy NW and Captain Kachuckles Facebook accounts. (*Id.* at 4.) To 7 support their application, the agents "attached . . . and incorporated" the affidavit of FBI Special 8 Agent Matthew McElhiney, which exhaustively described why the FBI believed that the owners 9 of both accounts were involved in the alleged robbery of Mr. Doe. (*See id.* at 4, 9–29.) After 10 reviewing the application, the Honorable Michelle L. Peterson, United States Magistrate Judge, 11 issued a search warrant. (*Id.* at 4.) The warrant limited the search of the "Captain Kachuckles" 12 account to information for the time period of January 1, 2019, to the present; the warrant did not 13 provide similar temporal limitations for the Streezy NW account. (Dkt. No. 60-1 at 3.) The 14 warrant limited the information to be seized to "fruits, contraband, evidence and 15 instrumentalities" of specified crimes stemming from the alleged robbery, and it identified seven 16 categories of data that might fall within the warrant's scope. (*Id.* at 6.) The warrant also 17 described the procedure for obtaining the Facebook data and how and by whom the data will be 18 sorted to identify items that comply with the warrant for seizure. (*Id.* at 27–28.)

19       In response to the warrant, Facebook disclosed 16,544 pages of data pertaining to the 20 Streezy NW account to the FBI since the account's opening in 2010. (Dkt. Nos. 60 at 5, 49 at 4.) 21 Special Agent McElhiney subsequently reviewed the data for information relevant to the 22 investigation. (Dkt. No. 60 at 5.) In accordance with the parameters in the warrant, Special Agent 23 McElhiney seized 1,934 pages of the 16,544 pages that Facebook initially disclosed. (*Id.*) Mr. 24 Sam now moves to suppress the evidence seized during this search on the basis that the warrant 25 for the "Streezy NW" account was overbroad. (Dkt. No. 49 at 1.)

26     **II. DISCUSSION**

"The Fourth Amendment was designed to prevent law enforcement officers from engaging in 'general exploratory searches.'" *United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008). To achieve that goal, the Fourth Amendment imposes several requirements on a search warrant. *United States v. Flores*, 802 F.3d 1028, 1045 (9th Cir. 2015); *United States v. Adjani*, 542 F.3d 1140, 1148–50 (9th Cir. 2006); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995). One of those requirements is that a warrant must not be overbroad. *Shi*, 525 F.3d at 731–32. In analyzing whether a warrant is overbroad, the Ninth Circuit considers three factors: (1) whether probable cause exists for seizure of all items described in the warrant; (2) if there are objective standards in the warrant that allow officers to distinguish between items subject to seizure from items not subject to seizure; and (3) whether the items described in the warrant could be described with more particularity considering the information available. *Shi*, 525 F.3d at 731–32.

Here, the warrant is not overbroad under the first two factors of the test for overbreadth. First, the record shows—and Mr. Sam does not contest—that law enforcement had probable cause to search the Streezy NW Facebook account based on the testimony and evidence gathered during the investigation and arrest of Mr. Peltier and Ms. Bourdieau. (Dkt. No. 60-1 at 14–17.) Second, the warrant contained objective standards to guide the search, as it limited the search to evidence of specific crimes and offered detailed examples of information that might constitute evidence of those crimes. (*Id.* at 6.) These objective standards significantly limited the information officers could seize from the Streezy NW account.

Despite these limiting standards, Mr. Sam argues that the warrant for the Streezy NW account should have had a temporal limit and should not have allowed the police to search information going back to the opening of the account in January 2010. (Dkt. No. 49 at 4.) However, the police needed to search that information because, as Special Agent McElhiney explained in his affidavit attached to the warrant,[1] Mr. Sam told police that the account was

---

[1] Mr. Sam argues that the reason for conducting a search of the Streezy NW account was not included in the warrant. (*See* Dkt. No. 62 at 5.) This is simply not true. The warrant expressly incorporated the affidavit of FBI Special Agent Matthew McElhiney. (*See* Dkt. No. 60-1 at 2.)

created to frame him and because information from the opening of the account would help the police establish the truth or falsity of Mr. Sam's assertion. (Dkt. No. 60 at 4.) Thus, temporal restrictions were not required in this case. *See Flores*, 803 F.3d at 1045. Indeed, such restrictions would have undermined the FBI's ability to link Mr. Sam to the Streezy NW account and, in turn, the alleged robbery.

Mr. Sam also argues that the warrant should have required the FBI to use a filter team—non-investigatory agents—when searching the Streezy NW account for information that fell within the warrant's scope. (Dkt. No. 49 at 3.) However, the Ninth Circuit has never held that a filter team is constitutionally required or that a warrant is overbroad because it does not require the use of a filter team. *See Flores*, 802 F.3d at 1045 n.22. The idea of requiring a filter team first appears in a concurrence in *United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008) ("*CDT*") (Kozinski, C.J., concurring). The concurrence offered "no legal authority for its proposal requiring the segregation of computer data by specialized personnel," *id.* at 1184 (Callahan, C.J., concurring), and it described that proposal as "guidance," *id.* at 1178 (Kozinski, C.J., concurring). Since that guidance was articulated, the Ninth Circuit has approved a search that did not use a filter team, noting that "*CDT* did not prohibit investigative teams from participating in data segregation as a general matter . . . and instead faulted the government for misleadingly suggesting in the warrant that the team would not be involved." *Flores*, 802 F.3d at 1045 n.22. Absent a Ninth Circuit case holding that filter teams are constitutionally required and explaining when that might be the case, the Court will not suppress evidence obtained pursuant to an otherwise-valid warrant simply because the warrant did not require the use of a filter team.

In sum, the Court finds that the warrant for the Streezy NW account was not overbroad.

---

That affidavit explained that while the FBI had probable cause to believe that Mr. Sam owned the Streezy NW account, the FBI needed to look for information proving Mr. Sam's ownership because Mr. Sam had told police that the account was not his. (Dkt. No. 60-1 at 19.) Thus, the warrant properly established the basis for the FBI to search information going back to the opening of the Streezy NW account.

The Court therefore DENIES Mr. Sam's motion to suppress.

**III.     CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's motion to suppress (Dkt. No. 49).

DATED this 5th day of May 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE