THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR19-0115-JCC |
| Plaintiff, | ORDER |
| v. | |
| JOSEPH SAM, | |
| Defendant. | |

This matter comes before the Court on Defendant Joseph Sam's motion to suppress cell phone contents (Dkt. No. 55). Having considered the parties' briefing and the relevant record, the Court GRANTS the motion in part for the reasons explained herein.

## I.   BACKGROUND

Mr. Sam has been indicted and charged with conspiracy to commit robbery, robbery, and assault resulting in serious bodily injury. (*Id.* at 1.) On May 15, 2019, Mountlake Terrace Police Officer Shin arrested Mr. Sam. (Dkt. No. 55-1 at 3.) Incident to the arrest, Officer Shin searched Mr. Sam and seized Mr. Sam's Motorola smart phone. (*Id.*)

What happened next is unclear. Mr. Sam says that during his arrest, Officer Shin activated his phone's display screen, which revealed the name "STREEZY." (*See* Dkt. No. 55 at 2.) The Government seems to dispute Mr. Sam's account, claiming that after Officer Shin brought Mr. Sam to the Tulalip Police Department, "officers"—whose identities are

unspecified—examined the phone "pursuant to inventory procedures . . . to determine the type of phone and whether it was locked, and to place it into airplane mode so the phone could not be wiped remotely." (*See* Dkt. No. 58 at 2.) But both the Government and Mr. Sam base their accounts on the report of Detective Sergeant Wayne Schakel, which says only that "[w]hen Sam was arrested, he had . . . a black Motorola Smart phone and the screen stated it was Metro PCS and the screen banner stated '>>>Streezy.'" (*See* Dkt. No. 55-1 at 3.) The report says nothing about the circumstances under which the phone was examined. (*See id.*) Those circumstances remain unknown.

What is known is that on February 13, 2020, the FBI removed Mr. Sam's phone from inventory, powered the phone on, and took a photograph of the lock screen. (*See* Dkt. No. 55-2 at 2.) The photograph shows the name "STREEZY" right underneath the time and date. (*See id.* at 3.) It also shows that the phone is in airplane mode. (*See id.*)

Mr. Sam now moves to suppress any evidence obtained from the first and second examinations of the phone. (Dkt. No. 55.)

## II.   DISCUSSION

In their respective briefs, Mr. Sam and the Government treat the police's and FBI's examinations as legally indistinguishable. (*See generally id.*; Dkt. No. 58.) They are not. The police's examination took place either incident to a lawful arrest or as part of the police's efforts to inventory the personal effects found during Mr. Sam's arrest. The FBI's examination, by contrast, occurred long after the police had arrested Mr. Sam and inventoried his personal effects. Those examinations present significantly different legal issues, which the Court will address separately.

### A.   The FBI's Examination

The Fourth Amendment protects people from "unreasonable searches and seizures" of "their persons, houses, papers, and effects." U.S. Const. amend. IV. The default rule is that a search is unreasonable unless conducted pursuant to a warrant. *See Vernonia Sch. Dist. 47J v.*

*Acton*, 515 U.S. 646, 653 (1995). This default rule makes the term "search" critically important because the term's definition often dictates when the Government needs to obtain a warrant. Over time, the Supreme Court has defined "search" in two distinct ways. The first establishes a "baseline" of Fourth Amendment protections: the Government engages in a search if it physically intrudes on a constitutionally protected area to obtain information. *See Florida v. Jardines*, 569 U.S. 1, 5 (2013). The second definition expands Fourth Amendment protections beyond notions of property. *See Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). Under that definition, the Government also engages in a search if it intrudes on a person's reasonable expectation of privacy. *See id.*

Here, the FBI physically intruded on Mr. Sam's personal effect when the FBI powered on his phone to take a picture of the phone's lock screen. *See United States v. Jones*, 565 U.S. 400, 410 (2012) (plurality opinion) (holding Government searched a car by attaching a GPS device to the car); *Bond v. United States*, 529 U.S. 334, 337 (2000) (concluding Border Patrol agent searched a bag by squeezing it); *Arizona v.* Hicks, 480 U.S. 321, 324–25 (1987) (holding officer searched stereo equipment by moving it so that the officer could view concealed serial numbers). The FBI therefore "searched" the phone within the meaning of the Fourth Amendment. *See Jardines*, 569 U.S. at 5. And because the FBI conducted the search without a warrant, the search was unconstitutional. *See Vernonia Sch. Dist.*, 515 U.S. at 653.

The Government argues that the FBI did not need a warrant because Mr. Sam had no reasonable expectation of privacy in his phone's lock screen. But that expectation is irrelevant. The reasonable-expectations test first emerged in *Katz v. United States*, 389 U.S. 437 (1967). Although the test sometimes determines when the Government engages in a search, the Supreme Court has repeatedly emphasized that "a person's 'Fourth Amendment rights do not rise or fall with the *Katz* formulation'" because "the *Katz* reasonable-expectations test 'has been *added to*, not *substituted for*,' the traditional property-based understanding of the Fourth Amendment." *Jardines*, 569 U.S. at 10–11 (quoting *United States v. Jones*, 565 U.S. 400, 409 (2012)); *see also*

*Carpenter*, 138 S. Ct. at 2213. Thus, when the Government gains evidence by physically intruding on a constitutionally protected area—as the FBI did here—it is "unnecessary to consider" whether the government also violated the defendant's reasonable expectation of privacy. *Jardines*, 569 U.S. at 10–11. Accordingly, the Court GRANTS Mr. Sam's motion to suppress as to the evidence the FBI gathered during the second examination of Mr. Sam's phone.

**B.     The Police's Examination**

The police's examination of Mr. Sam's phone raises different issues because the examination may have been a search incident to arrest or an inventory search—two special circumstances where the Government does not always need a warrant to conduct a search. Unfortunately, the Court cannot decide whether the police needed a warrant because the circumstances surrounding the police's examination are unclear. To explain why, the Court will briefly discuss the law governing searches incident to arrest and inventory searches.

1. <u>Searches Incident to Arrest</u>

A police officer's power to search a person incident to a lawful arrest is heightened such that it is often reasonable for a police officer to conduct a search incident to arrest without a warrant. *See Riley v. California*, 573 U.S. 373, 381–85 (2014). Whether a warrantless search incident to an arrest is reasonable depends on "the degree to which it intrudes upon an individual's privacy and . . . the degree to which it is needed for the promotion of legitimate governmental interests." *See id.* (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). The balance of these interests led the Supreme Court in *United States v. Robinson*, 414 U.S. 218 (1973), to create a "categorical rule" allowing officers to search physical objects found on an arrestee's person. *See Riley*, 573 U.S. at 383–86 (describing *Robinson*'s holding). In *Riley v. California*, 573 U.S. 373, 386 (2014), however, the Supreme Court declined to extend *Robinson*'s rule to searches of data on cell phones, holding that officers must generally secure a warrant before conducting such searches.

This case could fall at the intersection of *Robinson* and *Riley*. On the one hand, a phone is

a physical object, and it is debatable whether Mr. Sam has a greater privacy interest in his lock screen than he does in an address book, wallet, or purse—objects that appear searchable under *Robinson*. *See Riley*, 573 U.S. at 392–93 (citing *United States v. Carrion*, 809 F.2d 1120, 1123, 1128 (5th Cir. 1987); *United States v. Watson*, 669 F.2d 1374, 1383–84 (11th Cir. 1982); *United States v. Lee*, 501 F.2d 890, 892 (D.C. Cir. 1974)). On the other hand, *Riley* showed a unique sensitivity to the privacy concerns raised by searches of cell phones. *See id.* at 393–98. The tension between *Riley* and *Robinson* is, therefore, not easy to resolve in a case like this one. However, the Court need only resolve that tension if Officer Shin viewed the lock screen on Mr. Sam's phone incident to Officer Shin's arrest of Mr. Sam. The record does not show what Officer Shin did.

2.  Inventory Searches

When the police arrest a person, they may seize and inventory property found in the person's possession—a process known as an "inventory search." *See United States v. Garay*, 938 F.3d 1108, 1111 (9th Cir. 2019). Inventory searches serve three limited purposes: (1) protecting the property itself; (2) protecting the police from claims by the property's owner; and (3) protecting the police from potential danger. *See United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989). If an inventory search strays beyond these limited purposes—for example, if it is conducted "in bad faith or for the sole purpose of investigation"—then the search is unconstitutional. *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987). An inventory search is also unconstitutional if it is not carried out according to standard procedures. *See Florida v. Wells*, 495 U.S. 1, 4 (1990) (holding inventory search unconstitutional where Florida Highway Patrol had no policy regarding the opening of closed containers). Requiring such procedures "ensure[s] that the inventory search is 'limited in scope to the extent necessary to carry out the caretaking function.'" *Wanless*, 882 F.2d at 1463 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 375 (1975)).

In this case, the record is devoid of concrete evidence regarding the inventory search

purportedly conducted by the Tulalip Police Department. For example, the record does not show why the Tulalip Police Department felt it necessary to power on or manipulate Mr. Sam's cell phone to properly inventory the phone. The record also does not show whether the Tulalip Police Department's established procedures require its officers to power on every cell phone that they inventory. Indeed, the record does not even show whether the Tulalip Police Department searched Mr. Sam's cell phone. Accordingly, the Court cannot resolve Mr. Sam's motion to suppress as to the police's examination of the phone.

The Court hereby ORDERS the parties to file supplemental briefing addressing the circumstances surrounding Office Shin's and the Tulalip Police Department's alleged examinations of Mr. Sam's phone. That briefing should also address the relevant legal standard for searches incident to arrest and/or inventory searches. The Court recognizes that it may take time for the parties to gather the required information and conduct the necessary legal research. The Court therefore ORDERS the parties to file a joint status report proposing a briefing schedule within 14 days of the date this order is issued.

## II. CONCLUSION

For the foregoing reasons, the Court GRANTS in part Mr. Sam's motion to suppress cell phone contents (Dkt. No. 55). The Court further ORDERS the parties to file a joint status report proposing a supplemental briefing schedule within 14 days of the date this order is issued. The supplemental briefing should address (1) the circumstances surrounding the initial examination of Mr. Sam's phone and (2) the legal standard relevant to those circumstances.

DATED this 18th day of May 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE