The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JOSEPH SAM,<br>a/k/a WILLIAM EARLYSTAR CLARK,<br><br>    Defendant. | NO. CR19-115-JCC<br><br>GOVERNMENT'S TRIAL BRIEF |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Rebecca S. Cohen and Cecelia Gregson, Assistant United States Attorneys for said District, hereby files the Government's Trial Brief for the jury trial in the above-entitled matter scheduled to begin on June 7, 2021, before this Court.

## I.  INTRODUCTION

Defendant Joseph Sam a/k/a William Earlystar Clark is charged in a three-count Indictment with (1) Conspiracy to Commit Robbery, in violation of Title 18, United States Code, Section 371; (2) Robbery, in violation of Title 18, United States Code, Sections 2, 1153 and 2111; and (3) Assault Resulting in Serious Bodily, in violation of Title 18, United States Code, Sections 113(a)(6) and 1153.

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 1

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Trial is set to commence on June 7, 2021.  The government will be represented by Assistant United States Attorneys Rebecca S. Cohen and Cecelia Gregson.  The defendant will be represented by Stephan Illa.

## II.  TRIAL MATTERS

A.    *Estimated Length of Trial.*

The government anticipates needing approximately four to five days to present its case in chief.

B.    *Government Witnesses.*

The government intends to call approximately 25-35 witnesses to testify in its case in chief at trial.  The total number of witnesses will vary based in part on the Court's rulings on its motions *in limine* and its motion regarding land status.

C.    *Government Exhibits.*

The government has identified its proposed trial exhibits in a separately filed exhibit list.  The government's proposed exhibits consist of physical evidence (a cell phone), documents (e.g., tribal enrollment records, medical records, etc.), photographs, video recordings, and audio recordings.

D.    *Stipulations.*

The government attempted to enter into stipulations regarding Indian status, land status, and the admissibility of business records through Rule 902 certifications.  Because defendant was unwilling to enter into stipulations on these matters, the government has filed motions on the certification of business records and land status, and will call a witness to testify at trial regarding Indian status.  In the event the Court denies the pending motions, the government is prepared to call a witness to testify at trial regarding land status, as well as a number of records custodians to authenticate business records.

E.    *Jury Selection.*

The government understand that jury selection will occur solely in-person and not by remote means.  The government concurs with this approach and respectfully submits that due to the Court's restrictions on the number of people allowed in the courtroom at

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 2

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

one time, the prospective panel should be split into two groups with a separate *voir dire* conducted for each group.  As previously conveyed to the Court, the government objects to asking prospective jurors about their COVID-19 vaccination status, both because it could prevent the parties from selecting a panel of individuals who represent a fair cross-section of the community, and because it might serve to create divisiveness amongst the prospective jurors.

## III.  FACTUAL BACKGROUND

The government will seek to introduce the following evidence at trial.

On or about February 6, 2019, unindicted co-conspirator Mariah Boudrieau conspired with defendant Joseph Sam a/k/a William Earlystar Clark and co-defendant Dennis Peltier to rob John Doe of approximately one ounce of heroin.  The plan devised by Boudrieau was to tell her ex-boyfriend, John Doe, that she had a buyer who wanted to purchase an once of heroin and to arrange for the buy.  When Doe showed up, however, the co-conspirators would rob Doe of the heroin.  Boudrieau recruited Peltier to pose as the purported buyer of the heroin and had Doe come to Peltier's residence with the heroin believing that he would sell the heroin to Peltier.

Around 11:30 p.m. on February 6, 2019, John Doe arrived at Peltier's residence with an ounce of heroin.  He was accompanied by a friend, J.G., who waited in the car while Doe went inside.  Once inside, Doe spoke to Peltier and Boudrieau and showed them the heroin.  Peltier then went into the kitchen, pretending to look for $1200 in cash, which was the cost of the heroin.  While Doe waited for Peltier to return from the kitchen, a third co-conspirator entered the residence, leading his way through the door with a handgun.  When Doe spotted the gun he threw his body into the front door, smacking the individual's arm between the door and the door jamb.  This caused Boudrieau to attack Doe in an attempt to help facilitate the robbery.  While Doe and Boudrieau were engaged in a scuffle, the third co-conspirator shot Doe in the back and Doe dropped to the ground.  While he was on the ground, Boudrieau went through Doe's

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 3

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   pockets and took cash and his phone.  The shooter and Boudrieau then left the residence

2   with the cash, Doe's phone, and the heroin.

3        J.G. called 911 before leaving the area and law enforcement arrived on scene.

4   Doe gave a number of statements to officers from the Tulalip Police Department (TPD),

5   both to first responders on scene and at the hospital over the next few days.  Although

6   Doe could not identify the shooter because his face was covered, Doe did provide the

7   name "Dennis" as the person who posed as the buyer, and Doe repeatedly named

8   Boudrieau as the person who set up the robbery and took the cash and phone from his

9   wallet after the shooting.  Doe described the shooter as a Native American male, either

10  about his height or slightly taller, wearing silver rings, with tattoos on his fingers and

11  hands.

12       After the robbery and shooting, TPD obtained a warrant for Peltier's home, and

13  evidence found in the residence, along with information obtained from interviews, led

14  TPD to identify and arrest Peltier and Boudrieau within days.  After his arrest, Peltier told

15  TPD that although he did not know the shooter's name, Boudrieau had referred to him as

16  "Strap," and that it was Boudrieau who had originally come up with the plan for the

17  robbery.

18       In an attempt to identify the shooter, TPD conducted research on Facebook and

19  identified a Facebook user who was friends on Facebook with both Peltier and Boudrieau

20  – a user with the Facebook name "StreezyNW" and a nickname of "Strap."  The

21  "StreezyNW" account had pictures of an adult male that TPD was able to identify as

22  Joseph E. Sam, in part through tattoos depicted in the pictures.

23       On March 20, 2019, United States Magistrate Judge Mary Alice Theiler issued a

24  search warrant for information in the Facebook accounts of Peltier and Boudrieau.  Upon

25  review, the records returned by Facebook revealed communications between the account

26  associated with Boudrieau and the "StreezyNW" account, including communications

27  where Boudrieau referred to the user of the "Streezy NW" account as "Strap."

28  Additionally, Facebook conversations between Boudrieau and the "Streezy NW" account

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 4

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

discussed narcotics trafficking and on February 6, 2019, Boudrieau asked "Streezy NW" to help her with a robbery.  The communications also confirm that in the days after the robbery of John Doe, Boudrieau was frantically trying to get in touch with "Streezy NW," and that Boudrieau had tried to recruit a fourth individual – Facebook user "Captian Kachuckles," to help with the robbery.  Interviews with additional witnesses led TPD to further corroborate the identity of the person using the "StreezyNW" Facebook account as Joseph E. Sam and to confirm that Sam was the shooter.

On May 15, 2019, Sam was arrested on an arrest warrant issued by the Tulalip Tribal Court and the arresting officers seized a cell phone located on his person.  Officers transported Sam back to TPD, where he was interviewed after waiving his *Miranda* rights.  During the interview, Sam denied involvement in the robbery or the assault and claimed he was in Bellingham at the time.  Sam stated that he previously had been questioned by a Tulalip gaming official, who mistakenly identified him.  Sam further stated that the gaming official had been looking for another man who looked identical to him except for a scar.  Sam asserted that this other individual was likely the one involved in the robbery and assault.  When questioned about the "StreezyNW" Facebook account, Sam denied that the account was his.  He stated that someone else must have created the account and posted that information, pretending to be him, possibly trying to implicate him in the crimes.

Numerous friends and acquaintances of Sam have since confirmed Facebook communications and conversations with Sam in which Sam admitted to being involved in the robbery and shooting of John Doe.  Internet protocol addresses further corroborate that the cell phone seized from Sam's person at the time of his arrest was used on countless occasions to login to the "StreezyNW" account and a second account (user name "Smithn Wesson") attributable to Sam during relevant periods of time following the shooting.

## IV.  APPLICABLE LAW – ELEMENTS AND DEFINITIONS

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 5

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In order for the defendant to be found guilty of the crime of Conspiracy to Commit Robbery, in violation of Title 18, United States Code, Section 371, as charged in Count 1, the government must prove each of the following three elements beyond a reasonable doubt:  *First*, on or about February 6, 2019, there was an agreement between two or more persons to commit robbery; *Second*, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and *Third*, at least one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  *See* Ninth Circuit Model Jury Instruction – 8.20 (2010 Edition – Approved 1/2019).

In order for the defendant to be found guilty of the crime of Robbery, in violation of Title 18, United States Code, Sections 2, 1153, and 2111, as charged in Count 2, the government must prove each of the following three elements beyond a reasonable doubt: *First*, the defendant knowingly obtained money or property from or in the presence of John Doe; *Second*, the defendant did so by means of robbery; *Third*, the defendant believed that John Doe, parted with the money or property because of the robbery; *Fourth*, the offense occurred within Indian Country; and Fifth, the defendant is an Indian. *See* Ninth Circuit Model Jury Instruction – 8.143A (2010 Edition – Approved 3/2021); Comment to Ninth Circuit Model Jury Instruction – 8.113 (2010 Edition – Approved 6/2019).  The defendant may be found guilty of Robbery even if he personally did not commit the act or acts constituting the crime but aided and abetted in its commission. *United States v. Goldtooth*, 754 F.3d 763 (9th Cir. 2014).

In order for the defendant to be found guilty of the crime of Assault Resulting in Serious Bodily Injury, in violation of Title 18, United States Code, Sections 113(a)(6) and 1153, as charged in Count 3, the government must prove each of the following three elements beyond a reasonable doubt:  *First*, the defendant assaulted John Doe by intentionally striking or wounding him; *Second*, as a result, John Doe suffered serious bodily injury; *Third*, the defendant is an Indian; and *Fourth*, the assault occurred within Indian Country.  "Serious bodily injury" means bodily injury that involves (1) a

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 6

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  substantial risk of death; (2) extreme physical pain; (3) protracted and obvious

2  disfigurement; or (4) protracted loss or impairment of the function of a body part, organ,

3  or mental faculty.  *See* Ninth Circuit Model Jury Instruction – 8.9 (2010 Edition);

4  Comment to Ninth Circuit Model Jury Instruction – 8.113 (2010 Edition – Approved

5  6/2019).

## V.  LEGAL AND EVIDENTIARY ISSUES

6

7      A.  *Jurisdiction and Indian Status.*

8      The United States has jurisdiction, pursuant to Title 18, United States Code,

9  Section 1153, over offenses under Title 18, United States Code, Section 113, when such

10  offenses are committed by an Indian person within Indian Country, as defined by Section

11  1151 of Title 18, United States Code.[1]

12      A defendant is an "Indian" if he has (1) has some quantum of Indian blood and (2)

13  is a member of, or is affiliated with, a federally recognized tribe.  *United States v.*

14  *Zepeda,* 792 F.3d 1103, 1113 (9th Cir. 2015).  Indian status is a jurisdictional element for

15  the jury to decide.  *See United States v. Bruce*, 394 F.3d 1215, 1223-24 (9th Cir. 2005).

16      The jury will determine whether the government has met its burden of establishing

17  the defendant's Indian status based on the Ninth Circuit's Model Criminal Jury

18  Instruction No. 8.113 (Determination of Indian Status for Offenses Committed Within

19  Indian Country), which provides as follows:

20      In order for the defendant to be found to be an Indian, the government must
21      prove the following, beyond a reasonable doubt:

22      First, the defendant has some quantum of Indian blood, whether or not that
23      blood is traceable to a member of a federally recognized tribe; and

24

25

26  [1] As noted above, the government filed a motion asking the Court to find that the address where the government
27  alleges the crimes took place is located on tribal trust land within the boundary of the Tulalip Reservation and is in
Indian Country, and to instruct the jury of this finding.  The question of whether the offenses occurred at this
28  particular location is a question of fact to be decided by the jury.  The defense has informed the Court that it does
not oppose the government's requested relief on this issue.

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 7

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Second, the defendant was a member of, or affiliated with, a federally recognized tribe at the time of the offense.

Whether the defendant was a member of, or affiliated with, a federally recognized tribe is determined by considering four factors, in declining order of importance, as follows:

> 1. Enrollment in a federally recognized tribe;
>
> 2. Government recognition formally and informally through receipt of assistance reserved only to individuals who are members, or are eligible to become members, of federally recognized tribes;
>
> 3. Enjoyment of the benefits of affiliation with a federally recognized tribe; and
>
> 4. Social recognition as someone affiliated with a federally recognized tribe through residence on a reservation and participation in the social life of a federally recognized tribe.

Ninth Circuit Model Criminal Jury Instruction § 8113.

The government will ask that the Court instruct the jury that the Upper Skagit Tribe is a federally recognized tribe.[2]

In the present case, the government will establish the defendant's status at trial through the testimony of a member services officer of the Upper Skagit Tribe, who will testify that the defendant has been an enrolled member of the Upper Skagit Indian Tribe since 1979. The government will admit into evidence the defendant's Certificate of Tribal Enrollment, which shows that he was added to the rolls of the Upper Skagit Indian Tribe through a resolution passed on September 28, 1979, and that his total blood

---

[2] The Upper Skagit Indian Tribe is listed in the Federal Register by the United States Department of the Interior, Bureau of Indian Affairs (BIA) as a federally recognized tribe. *See, e.g.*, Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs ("BIA List"), 84 Fed. Reg. 1200 (February 1, 2019). "Absent evidence of its incompleteness, the BIA list appears to be the best source to identify federally acknowledged Indian tribes whose members or affiliates satisfy the threshold criminal jurisdiction inquiry." *LaPier v. McCormick,* 986 F.2d 303, 305 (9th Cir. 1993).

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 8

quantum is 1/4.  This evidence alone is sufficient to establish the defendant's status as an Indian.[3]

      B.    *Statements Under the Federal Rules of Evidence Pertaining to Hearsay.*

A statement is hearsay if it is (1) an assertion that (2) is made out of court and (3) is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).  Many court statements may be considered non-hearsay because they either are not assertions, or they are not offered to prove the truth of the matter asserted. *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) (questions are not assertions and are thus not hearsay).

      1.    <u>Excited Utterances, Rule 803(2).</u>

An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excited that it caused." Fed. R. Evid. 803(2).  Two factors are considered; "[f]irst, there must be some occurrence or event sufficiently startling to render normal reflective thought processes inoperative.  Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977) (quoting *McCormick on Evidence*, 2d Ed. p. 704).  The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of rule 803(2). *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995) (citing *United States v. Iron Shell*, 633 F.2d 77, 85 (8th Cir.1980)); *see also* Fed. R. Evid. 803 advisory committee's note.  In *Rivera*, a 15-year-old child was raped in a truck by an individual who was driving her home.  The victim reported the rape to her mother after the rape had occurred earlier that morning. *Id*. at 1296.  The court affirmed the statements as admissible under the excited utterance exception, noting that "[r]ather than focusing solely on the time a statement was made, we consider other factors,

---

[3] *See, e.g., United States v. Zepeda*, 792 F.3d 1103, 1115-16 (9th Cir. 2015) (enrollment certificate showing enrollment in a federally recognized tribe at the time of the offense and evidence of blood quantum was enough to satisfy the test for Indian status).

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 9

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    including the age of the declarant, the characteristics of the event and the subject matter
2    of the statements . . . ." *Id.*

3        In this case, John Doe made excited utterances to the TPD officers who first
4    arrived on scene when he described having just been shot in the back and robbed, and
5    named Boudrieau as the person who set him up.

6              2.    <u>Statements Made by John Doe Regarding His Then-Existing Mental,</u>
7                    <u>Emotional, or Physical Condition, Rule 803(3).</u>

8        Rule (803)(3) "excepts from the general exclusion of hearsay 'statement[s] of the
9    declarant's then-existing state of mind (such as motive, intent, or plan) or emotional,
10   sensory, or physical condition (such as mental feeling, pain, or bodily health), but not
11   including a statement of memory or belief to prove the fact remembered or believed[.]'"
12   *Wagner v. County of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013); Fed. R. Evid.
13   803(3).  Here, John Doe made numerous statements to law enforcement officers and
14   medical providers about the physical symptoms and pain he was experiencing at the time
15   the statements were made.  For example, Doe told officers he couldn't feel his legs and
16   screamed out in pain.  These are exactly the type of statements covered by Rule 803(3),
17   as Doe was explaining his then-existing physical condition at the time each statement was
18   made.  *See, e.g., United States v. Iron Shell*, 633 F.2d 77, 83, n.9 (8th Cir. 1980) (finding
19   that a statement made by the victim to her medical provider that she was experiencing
20   pain in her vaginal area was an "expression of a present symptom [that] falls within the
21   second category of 803(4) and would also be excepted from the hearsay rule under rule
22   803(3) covering a then existing physical condition").

23              3.    <u>Recorded Recollections, Rule 803(5).</u>

24       When he testifies at trial, if John Doe (or any other witness) is unable to recall any
25   of the events surrounding the robbery and shooting and/or what occurred immediately
26   thereafter, the government will seek to play body cam recordings of his prior statements
27
28

Government's Trial Brief
*United States v. Joseph Sam*, CR19-115-JCC - 10

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

as recorded recollections that are not excluded by the rule against hearsay.[4]  Rule 803(5) permits such an admission, and applies to the following records/statements:

> ***Recorded Recollection***.  A record that:
>
> (A)  is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B)  was made or adopted by the witness when the matter was fresh in the witness's memory; and
>
> (C)  accurately reflects the witness's knowledge.

Fed. R. Evid. 803(5).[5]  The "hearsay exception for recorded recollection is generally recognized and has been described as having 'long been favored by the federal and practically all the state courts that have had occasion to decide the question." *Mordick v. Valenzuela*, 780 Fed. Appx. 430, 434 (9th Cir. June 27, 2019) (quoting Advisory Committee Note to Rule 803(5)).

### 4.   Prior Consistent Statements, Rule 801(d)(1)(B).

A witness's prior consistent statements are admissible for their truth, pursuant to Fed. R. Evid. 801(d)(1)(B)(ii), when necessary to rebut attacks on the witness's credibility.  Rule 801(d)(1)(B) provides that statements satisfying the following conditions are not hearsay:

> The declarant testifies and is subject to cross-examination abut a prior statemen, and the statement . . . is consistent with the declarant's testimony and is offered (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground.

Fed. R. Evid. 801(d)(1)(B).

Prior to a 2014 amendment to Rule 801(d)(1)(B), only prior consistent statements offered to rebut charges of recent fabrication or improper motive were substantively

---

[4] In addition, some or part of the statements are also admissible under other hearsay exceptions discussed separately in this brief.

[5] The rule goes on to state that "[i]f admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party." *Id.*

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 11

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

admissible.  However, with the addition of subpart (ii), consistent statements that rebut other attacks on a witness, for example, "charges of inconsistency or faulty memory" may be given substantive effect by the jury.  *United States v. Wilkinson,* No. 1:14-CR-BLW-1, 2015 WL 6182466 at *12 (D. Idaho Oct. 21 (2015) (*citing* Fed. R. Evid. 801 Ad. Comm. Notes).

### 5.   Statements of Co-Conspirators.

Facebook and text messages sent to and from the defendant, as well as electronic communications offered that are solely among other members of the conspiracy, are admissible as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).  Under Rule 801(d)(2)(E), a statement made by a co-conspirator is admissible if the government establishes by a preponderance of the evidence: (1) the existence of a conspiracy; (2) the defendant's connection to it, and (3) that the statement was made during and in furtherance of the conspiracy.  *Bourjailly v. United States*, 483 U.S. 171, 175 (1987); *United States v. Fleishman*, 684 F.2d 1329, 1337 (9th Cir. 1982). The statements themselves may help establish their admissibility and reliability under 801(d)(2)(E).  *See Bourjailly*, 483 U.S. at 175; *see also United States v. Schmit*, 881 F.2d 608 (9th Cir. 1989).  However, there must be some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement.  *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988).  Circumstantial evidence is sufficient.  *See, e.g., United States v. Mason*, 658 F.2d 1263, 1269 (evidence that defendant visited coconspirator's residence just prior to time coconspirator advised he had drugs was sufficient to connect defendant to the conspiracy).

To satisfy the "furtherance" requirement, the statement must be said to "'further the common objectives of the conspiracy,' or, 'set in motion transactions that [are] an integral part of the [conspiracy].'"  *United States v. Layton*, 720 F.2d 548, 555 (9th Cir. 1983).  Examples of statements "in furtherance" of a conspiracy include statements that keep a conspirator abreast, *United States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir. 1987); induce continued participation, *United States v. Eaglin*, 571 F.2d 1069, 1083 (9th

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 12

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Cir. 1977); allay fears, *United States v. Layton*, 720 F.2d 548, 557 (9th Cir. 1983); explain co-conspirators' roles, *United States v. Moody*, 778 F.2d 1380, 1382-83 (9th Cir. 1985), amended by 791 F.2d 707 (9th Cir. 1986); or aim to avoid detection, *United States v. Sears*, 663 F.2d 896, 905 (9th Cir. 1981).  The focus is on the declarant's intent in making the statement, not on its actual effect of promoting the goals of the conspiracy. *United States v. Zavala Serra*, 853 F.2d at 1516; *United States v. Layton*, 720 F.2d 548, 557 n.5 (9th Cir. 1983).

Additionally, it is not necessary that the statement be made to another member of the conspiracy for it to come under Rule 801(d)(2)(E).  *See Zavala Serra*, 853 F.2d at 1516 (statements to government informant); *United States v. Taylor*, 802 F.2d 1108, 1117 (9th Cir. 1986) (statements to undercover FBI agent); *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir. 1985) (statements to undercover DEA agent); *United States v. Smith*, 623 F.2d 627, 631 (9th Cir. 1980) (statement to informant).

The order of proof is left to the discretion of the Court such that a co-conspirator's statements may be admitted subject to being struck for failure of independent proof of the existence of the conspiracy and the defendant's connection to it.  *United States v. Perez*, 658 F.2d 654, 658 59 (9th Cir. 1981).

Finally, the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 56 (2004), has no effect on the admissibility of statements by co-conspirators in furtherance of a conspiracy.  Specifically, the Supreme Court found that the statements of co-conspirators are not made with the expectation that they will be used at trial, and therefore there is no Sixth Amendment violation by an inability of the defendant to cross examine the coconspirators who made the statements.  *Id*.; *see also United States v. Larson*, 460 F.3d 1200. 1213 (9th Cir. 2006) (Ninth Circuit recognizing that the admission of co-conspirator statements do not violate the Sixth Amendment).[6]

---

[6] Co-conspirator Boudreau was charged in Snohomish County Superior Court for her role in the robbery and assault.  She was convicted after a jury trial in July 2020 and has an appeal pending with Division I of the Washington State Court of Appeals.  The government intends to call Boudreau to testify at trial. A hearing will

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.   <u>Statements by Other Individuals in Electronic Communications Are Not Hearsay</u>.

Some of the evidence in this case will consist of electronic communications between defendant and other individuals in Facebook messages and other messages to or from Peltier and/or Boudrieau in furtherance of the conspiracy.  Defendant's statements are admissible as statements of a party opponent pursuant to Rule 801(d)(2)(A).  And as discussed above, statements of co-conspirators made in furtherance of the conspiracy are admissible as well.

The statements of the other speakers in these communications are admissible for a variety of non-hearsay purposes, rather than for the truth of the matters asserted by those speakers.  Generally, the statements by other speakers are offered to put defendant's or the co-conspirators statements in context.  *See United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985); *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2007) ("Statements providing context for other admissible statements are not hearsay because they are not offered for their truth"); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990) (the district court properly admitted evidence of an informant's recorded statements during a conversation with the defendant where they were presented not for the truth of the matter asserted, but to establish a context to assist the jury in understanding the recorded statements of the defendant, i.e., his admissions); *see also United States v. Davis*, 890 F.2d 1373, 1380 (7th Cir. 1989) (when a defendant has an out-of-court recorded conversation with a third party, and the defendant's statements are admissible as party admissions, the third party's statements to the defendant during the recorded conversation are admissible "as reciprocal and integrated utterances between two parties for the limited purpose of putting the response of the defendant in context of making them intelligible to the jury and recognizable as admissions").

7.   <u>J.G.'s Statements Against Interest</u>.

---

need to be conducted outside the presence of the jury to determine if she intends to invoke her Fifth Amendment right to silence in light of the actively pending appeal.

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 14

1    Pursuant to Rule 804(b)(3), a statement made against the declarant's penal interest

2  is admissible as an exception to the hearsay rule if the declarant is unavailable to testify at

3  trial due to death, in cases where the statement is "supported by corroborating

4  circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3). Here,

5  John Doe's friend J.G. made numerous statements to law enforcement in the days

6  following the robbery and assault. These statements were contrary to J.G.'s penal

7  interests and are corroborated by information provided by Doe and Peltier. J.G. admitted

8  that on February 6, 2019, he provided heroin to Doe with the belief that Doe would sell it

9  to Peltier. J.G. also discussed how he accompanied Doe to Peltier's residence for the sale

10 and described his interactions with Boudrieau at the scene. J.G. subsequently died in

11 August of 2019. His prior statements made to law enforcement about what occurred on

12 the night of the robbery and assault are admissible under Rule 804(b)(3).

13    C.    *Other Evidentiary Issues*.

14        1.    Witness Impeachment.

15    The defense should be required to provide notice if it intends to impeach witnesses

16 called by the government with their criminal histories. Rule of Evidence 609 governs

17 impeachment of witnesses based on criminal convictions. A party may impeach a

18 witness (other than the defendant) with a conviction for a crime punishable by

19 imprisonment in excess of one year (*i.e.*, felonies) if it satisfies Rule of Evidence 403.

20 *See* Fed. R. Evid. 609(a)(1). A party may also impeach a witness with a conviction for

21 any crime, regardless of the punishment (*i.e.*, misdemeanors), if the elements are such

22 that the conviction necessarily evidences a dishonest act or false statement. *See* Fed. R.

23 Evid. 609(a)(2). However, if over ten years has passed since the latter of the witness's

24 conviction or release from custody, the conviction is admissible only if the probative

25 value substantially outweighs the prejudice, and the proponent provides written notice to

26 the adverse party. *See* Fed. R. Evid. 609(b). On May 21, 2021, the government provided

27 complete criminal history reports for witnesses that the government anticipates calling

28 during its case-in-chief. Pursuant to the rule, the government requests notice detailing the

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 15

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information the defense intends to elicit concerning a witness's prior conviction subject to Rule of Evidence 609(b).

Rule 609 does not govern the use of prior arrests or warrants for purposes of impeachment. *See Medrano v. Los Angeles*, 973 F.2d 1499, 1507 (9th Cir. 1992). Instead, this issue is governed by Rule 608(b), which governs specific instances of misconduct by a witness. The district court may permit a party to inquire during cross-examination about specific instance of conduct relating to veracity or character for truthfulness or untruthfulness. *See* Fed. R. Evid. 608(b).

To that end, the government produced law enforcement reports documenting witness interactions with law enforcement that could potentially qualify as a specific instances of misconduct relating to veracity. That said, an adverse party may not introduce extrinsic evidence to prove the witness' past conduct, including in circumstances in which the witness denies the conduct. *See id.* Several of the produced reports have limited probative value because they qualify as nothing more than an accusation of misconduct, which is generally outweighed by the accompanying prejudice. *See Michelson*, 335 U.S. at 482 ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness."); *see also Barber v. City of Chi.*, 725 F.3d 702, 709 (7th Cir. 2013); *United States v. Weicks*, 362 F. App'x 844, 849-50 (9th Cir. 2010). The government requests the defense provide notice in advance of cross-examination on a specific instance of conduct.

### 2.   Body Camera Recordings.

The government expects to offer excerpts of body-worn video (BWV) recorded by the TPD officers who responded to the 911 call on February 6, 2019. These excerpts will depict the scene encountered by the officers upon their arrival and their initial encounter with John Doe. The government will establish the authenticity, accuracy, and trustworthiness of the video clips through the officers who wore the cameras. The statements made by John Doe in the video are admissible under exceptions to the hearsay

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 16

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  rule discussed elsewhere in this Trial Brief (e.g., present sense impression, excited
2  utterances, prior consistent statements).

3          3.      Photographs and Diagrams.

4          The government expects to offer photographs and maps of various locations
5  associated with the case, including the scene robbery and shooting.  These exhibits are
6  admissible if a witness testifies that they are accurate representations of what they are
7  intended to depict.  *United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980)
8  (evidence that photographs accurately depict scene provides a sufficient foundation for
9  admission under FRE 901(a)).

10         4.      Charts and Summaries.

11         The government will seek to introduce exhibits summarizing information from
12  records produced by Facebook, AT&T, Frontier, Text Now, and T-Mobile.  The
13  government intends to have FBI Special Agent Matthew McElhiney and TPD Detective
14  Sergeant Wayne Schakel testify about the summary exhibits.  The government may use
15  some of its charts and summaries during opening statements, the presentation of its case
16  in chief and/or during closing argument.  These charts and summaries will substantially
17  assist the jury in understanding the government's proof in this case.

18         It is well-established that a trial court in its discretion may allow the presentation
19  of summary evidence to guide and assist the jury in understanding and judging the factual
20  controversy.  *See* Fed. R. Evid. 1006; *United State v. Skalicky*, 615 F.2d 1117, 1120-21
21  (5th Cir. 1980); *United States v. Cooper*, 464 F.2d 648, 656 (10th Cir. 1972).  A
22  foundation for the admission of each chart and summary will be laid through the
23  testimony of various witnesses, who will testify that the charts and summaries accurately
24  reflect information contained in documents already in or to be admitted into evidence.
25  *See United States v. Lemire*, 720 F.2d 1327, 1349 (D.C. Cir. 1983); *United States v.*
26  *Pollack*, 417 F.2d 240, 241 (5th Cir. 1969).

27         Because of the voluminous amount and nature of data evidence in this case, the
28  government intends to rely on the testimony of Special Agent Mcelhiney and Detective

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 17

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Sergeant Schakel to summarize and analyze the contents of the information retrieved from the various accounts which will be offered as evidence at trial.  Federal Rule of Evidence 1006 provides that "the contents of voluminous writings, recordings or photographs which cannot be conveniently examined in Court may be presented in the form of a chart, summary, or calculation."  The Ninth Circuit has recognized that summary evidence "can help the Jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989), quoting *United States v. Lemire,* 720 F.2d 1327, 1348 (D.C. 1983); *see also United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (approving the use of a summary chart where the sequence of events as confusing and the chart contributed to the clarity of the presentation).

Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence.  *United States v. Meyers,* 847 F.2d at 1412.  The foundation for admission of such a summary is simply that the records are voluminous and that in-court examination would be inconvenient. *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990).

Summary charts may also be used by the government in its opening statement. Indeed, "such charts are often employed in complex conspiracy cases to provide the Jury with an outline of what the government will attempt to prove."  *United States v. De Peri,* 778 F.2d 963, 979 (3d Cir. 1985) (approving government's use of chart), *cert denied*, 475 U.S. 110 (1986); *United States v. Rubino*, 431 F.2d 284, 290 (6th Cir. 1970), *cert. denied* 401 U.S. 910 (1971) (same).

In addition, summary charts are admissible under Fed. R. Evid. 611(a), which permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth; (2) avoid needless consumption of time; and (3) protect witnesses from harassment or undue embarrassment."  *United States v. Gardner,* 611 F.2d 770, 776 (9th Cir. 1980).  A chart summarizing the unavailable document is

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 18

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  also admissible under Fed. R. Evid. 1004 if the underlying materials are "lost or

2  destroyed" or "not obtainable."  Fed. R. Evid. 1004(1) and 1004(2).

3      A summary witness may also properly testify about, and use a chart to summarize,

4  evidence that has already been admitted.  The court and jury are entitled to have a witness

5  "organize and evaluate evidence which is factually complex and fragmentally revealed."

6  *United States v. Shirley*, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony

7  regarding her review of various telephone records, rental receipts, and other previously

8  offered testimony held to be proper summary evidence as it helped the Jury organize and

9  evaluate evidence; summary charts properly admitted); *United States v. Lemire*, 720 F.2d

10  1327, 1348 (D.C. Cir. 1983), *cert. denied,* 467 U.S. 1266 (1984).

11     Finally, a summary witness may rely on the analysis of others where he or she has

12  sufficient experience to judge another person's work and incorporate as his own the facts

13  of that individual's expertise.  The use of other persons in the preparation of summary

14  evidence goes to its weight, not its admissibility.  *United States v. Soulard*, 730 F.2d

15  1292, 1299 (9th Cir. 1984); *see Diamond Shamrock Corp. v. Lumbermens Mutual*

16  *Casualty Co.*, 466 F.2d 722, 727 (7th Cir. 1972) (It's not necessary… that every person

17  who assisted in the preparation of the original records of the summaries be brought to the

18  witness stand").

19          5.    Arguing Penalties.

20     Absent extraordinary statutes requiring the jury to participate in sentencing

21  determinations, the sole function of the jury is to determine guilt or innocence.

22  Punishment is within the exclusive province of the Court.  *United States v. Del Toro*, 426

23  F.2d 181, 184 (5th Cir. 1970); *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir.

24  1971).

25     As such, it is improper for a party to elicit evidence that would allow the jury to

26  speculate as to the punishment a defendant faces if convicted.  *United State v. Feuer*, 403

27  Fed. Appx. 538, 540 (2d Cir. 2010) (unpublished) (absent exceptional circumstances, a

28  "defendant has no legal right to introduce evidence or argument regarding sentencing

consequences."); *United States v. Cook*, 776 F.Supp. 755, 756-57 (S.D.N.Y. 1991) ("The function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, un-swayed by emotion, fear, or prejudice.  Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function.") (citations omitted); *see also United States v. Pabon-Cruz*, 391 F.3d 86 (2d Cir. 2004).

It is proper for the court to interrupt any arguments relating to punishment or appeals for mercy.  *See United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir. 1971); *Gretter v. United States*, 422 F.2d 315, 319 (10th Cir. 1970).  Some cases have held that the court is required to do so.  *See United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971); *May v. United States*, 175 F.2d 994, 1010 (D.C. Cir. 1949); *see also United States v. Young*, 470 U.S. 1, 13 (1985) (stating that the "better course" would have been for the trial judge to interrupt defense counsel's improper argument rather than leaving it for the prosecutor to address in rebuttal.

To allow the jury to be swayed by arguments regarding possible punishment would be to permit them to violate their oath not to allow their verdict to be affected by sympathy.  *See United States v. Del Toro*, 426 F.2d at 184 ("To inform the jury [concerning] matters relating to the disposition of the defendant, tends to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.") (quoting *Pope v. United States*, 298 F.2d 507 (5th Cir. 1962)).

In short, the defendant should not seek to inflame the prejudices of the jury or conjure up sympathy by referring to the potential sentences and collateral consequences he would face upon conviction.

## VI.  RECIPROCAL DISCOVERY

To date, the government has provided over 10,000 pages of discovery to the defense, including documents, law enforcement reports, memoranda, photographs, audio files, video recordings, transcripts, and laboratory material.  The United States has not

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 20

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

received any reciprocal discovery from the defense and will seek to exclude any offered during the course of trial that should have been provided previously, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

VII.  CONCLUSION

The United States will supplement this trial brief, if necessary, to address any additional issues that may be raised.

Dated this 25th day of May, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*/s/ Rebecca S. Cohen*
REBECCA S. COHEN
CECELIA GREGSON
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone:  206-553-7970
Email:  Rebecca.Cohen@usdoj.gov

Government's Trial Brief
*United States v. Joseph Sam,* CR19-115-JCC - 21

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970